The opinion of the court was delivered by
Rogers, J.
It is a general rule of the common law, that whatever is ánnexed to the inheritance during the tenancy, becomes so much a part of it, that it cannot be removed by the tenant, although the improvements may have been made at his own expense. As in Warner v. Fleetwood, 4 Rep. 63, glass put in by the tenant, or wainscot fastened by nails, was held part of the inheritance. To this rule there are certain exceptions, nearly as old as the rule itself, as between landlord and tenant, that whatever buildings or other fixtures are erected for the purpose of carrying on trade or manufactures, may be removed by the tenant^ during the term. The cases upon this sul^eet are collected by Lord Ellenborough, in Elmes v. Maw, (3 East, 38,) and by Mr. Justice Story, in Van Ness v. Packard, (2 Peters’ Rep. 145.) As to substantial improvements, they are usually made a consideration for extending the term of the lease; or some collateral agreement is made, so as to allow of some compensation to the tenant. The latter was the course adopted by the ■ parties to this contract. The tenant, White, erected on the premises, several improvements, among which was a stable, and two shops, which it is said, greatly enhanced the value. It was agreed at or about the time of the erection of these improvements, between White and Mr. and Mrs. Lloyd, who had an estate for life, that White was to have the liberty of selling or removing the stable, and that the barber’s shop, and other small buildings erected by him were to be taken at a valuation; and that if a valuation should not be agreed on, White was to have the privilege of removing the ma *94 terials of the shops. As between the parties to this contract, this agreement was a good consideration; and any violation of it on the part of Lloyd, would have subjected him to an action. And I am inclined to believe, on the authority of Van Ness v. Packard, that if the estate of Lloyd had continued until the end of the term, White would have had a right to remove the buildings from the premises, without the consent of the owner of the remainder, notwithstanding the general principle, that whatever is annexed to the freehold, becomes part of it, and cannot afterwards be removed, except by him who is entitled to the inheritance. The exception in favour of trade, which is founded on public policy, and intended to encourage manufactures and the improvements of the country, may well apply to this case; for the question does not depend, upon the size or form of the house, or the manner in which it is built; but the only inquiry always is, whether it was intended for .purposes of trade or not; and I cannot believe that the nature of the business, whether agricultural or mercantile, can make any difference. But while these principles are conceded, I am unwilling to extend them beyond the duration of the estate which the tenant for life has in the premises, so as to subject the owner of the fee to payment for the buildings, or to compel him to allow them to be removed. In the case at bar, Lloyd’s interest was in right of his wife, who had a life estate. On her death, the interest in possession vested in Arndt, the owner of the remainder in fee.
The death of Mrs. Lloyd put an end to White’s lease. Now, there is no principle better established by authority, than that, even, as between landlord and tenant, fixtures must be removed during the term. After the term they became inseparable from the freehold, and can neither be removed by the tenant, nor recovered by him as personal chattels, by an action of trover, or for goods sold and delivered. 1 Atk. 477, ex parte Quincy. 3 Atk. 13 Lamb, v. Lamb, and the note. 2 Peters’ R. Lard Dudley v. Lord Ward, Ambl. 113, Co Lit. 53 a. Brooke Waste, 104, 142. Cooper’s case, Moore 177. Day v. Bisbitch, Cro. E. 374. Lord Derby v. Asquith, Hob. 234. 4 Term, Rep. 745. 7 Term, Rep. 157.
It has been contended by the counsel for the plaintiff in error, that the tenant for life can bind the remainder man by contract, so as to compel him either to pay for improvements which enhance the value of the property, or to permit them to be removed when it can be done without injury to the inheritance. For this position, they rely on Whiting v. Brastow, (4 Pickering, 310,) in which it is ruled, that a tenant for life, years, or at will, may at the determination of his estate remove such erections, &c. as were placed on the premises by himself, the removal of which will not injure the freehold, or put the premises in a worse plight than when he entered. In Whiting v. Brastow, the tenant removed a padlock used for securing a binn house, and moveable boards fitted and used for *95 putting up corn in binns. That was a case between landlord, and tenant, and not between tenant for life and the remainder man; the rule being that, as between the latter, in questions respecting the right to what are ordinarily called fixtures, as between tenant for life or in tail and the remainder man or reversioner, the law is considered more favourable than between landlord and tenant. It is construed most strictly between the executor and heir, in favour of the latter; more liberally between tenant for life, or in tail, and the remainder man, or reversioner, in favour of the former; and with much greater latitude between landlord and tenant, in favour of the tenant. A distinction arises, also, between the cases, from the nature of improvements. In Whiting v. Brastow, the court treated the improvements as personal chattels; but this cannot be said of these erections which ■ are of a permanent substantial kind, and which surely would not have gone to the executors of Mrs. Lloyd, if the buildings had been erected by her. It would have been waste in the tenant to have removed them; for it is in general true, that when a lessee having annexed any thing to the freehold, during his term, afterwards takes it away, it is waste. Co. Lit. 53. Moore, 177, 4 Co. 64. Hob. 234.
Doty v. Gorham (5 Pickering, 487,) merely decides that a shop placed on the lands of the plaintiff, with his permission, was a chattel, and as such may be sold, on an execution against the owner and that the purchaser has a right to enter on the land and remove the shop. This principle it is not necessary to controvert, as the application of it is riot perceived.
It must be remarked, that the agreement does not purport to bind Arndt, the owner of the remainder in fee, and seems to have been made under the belief and with the wish, that the life interest would last as long as the lease, which was but for three years. But if the intention were to bind him, the objection arises, that it is not competent for them to make an agreement, to affect the inheritance. On the falling in of the particular estate, the remainder man or reversioner-is entitled to all the improvements, which the law denominates fixture's, without regard to the manner they are constructed, the persons who may have erected them, or whether they may contribute to enhance the value of the property or not. If the tenant for life, or the person .with whom he contracts, wishes to avoid the consequences, the improvements must be removed during the continuance of the first estate; or the assent of the remainder man, or reversioner, must be obtained. There is nothing which shows any assent to the agreement by Arndt. The deposition of Lloyd proves nothing further than that the rent was made known to Arndt, and that he made no objection against White being the tenant for the remainder of the lease. But not a word was said, so far as appears, about this agreement. It is in general true, that where there is a lease for years, and by consent of both parties the tenant continues in possession afterwards, the law implies a tacit renovation of *96 the contract. But that principle cannot fairly be made to apply to this case; for here, although the lease terminated at the death of Mrs. Lloyd, and the teuant continued in possession with the consent of Arndt, yet that would bind the parties to nothing more than what came within the terms of the lease. It would not include the case of a collateral agreement, independent of the lease itself. The agreement on which this case turns, was a collateral agreement, of which it does not appear that Arndt was in any manner apprized, or to which there is not the slightest evidence he assented, either directly, or by necessáry implication.
Judgment affirmed.