[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 236 
Barmore being a tenant at will of the premises on which he erected the building in controversy, the first question is, whether the statute (Laws of 1852, ch. 384) is applicable to such a case. The first section declares "that any person who shall, by virtue of any contract with the owner thereof,
perform any labor or furnish materials in building, c., any house or other building, c. [in certain counties of this State], shall have a lien for the value of such labor and materials upon such house or building, and upon the lot of land on which the same shall stand, to the extent of the right, title and interest, at the time existing, of such owner," c. The term `owner,' as used in this statute, obviously refers to the erection, and not to the land on which it is placed. If the land is owned by one person, and the building by another, it is only the title of the latter which can be affected by the lien. If he has any interest in the land, that will be included in the same charge. In short, the statute, in its terms and policy, is adapted to the case of a fixture removable by a tenant, not less than to cases, more common, where the owner of he freehold himself makes and owns the improvement. If, therefore, Barmore had a right to remove the erection, it became subject to the lien of the plaintiffs for materials furnished, and they could acquire a good title by a sale under a judgment against him, obtained according to the statute.
Barmore was a tenant at will under Wynant, who had a lease of the premises for five years. Wynant was the successor to one Hall, who had held a lease for the same term of time, but had surrendered it. In Hall's lease there was a covenant that he would leave on the premises all trees, buildings, c., which he might put thereon during his term. In the lease of Wynant, immediately following the description of the premises, are the words: "With all the privileges thereto belonging, as enjoyed by S. Hall." On the part of the defendant, it is claimed that these words subjected Wynant to the covenant of Hall not to remove erections put up during the term, and on this ground that the building now in question, erected by Barmore, the undertenant of Wynant, became *Page 238 
immovably annexed to the soil. Without examining to see whether the undertenant would stand, in this respect in the same situation as Wynant, we are of opinion that the words quoted do not have the effect of introducing into the lease of the latter the covenants contained in the prior one given to Hall. These words are descriptive of the premises and privileges to be enjoyed. It would be giving a very enlarged, and, I think, a very loose construction, to regard them as imposing burdens, while professing only to grant benefits. To allow them such a force and meaning, would be to reject a construction which is natural and obvious, and to adopt one which, to say the least, is remote and hazardous.
After the plaintiffs had caused execution to be issued upon their judgment obtained against Barmore under the lien law, and a levy to be made on the building in controversy, and shortly before the sale, the defendant procured both Wynant and Barmore to surrender their interests in the premises leased, and Barmore agreed with the defendant to quit possession whenever required. The sale then took place, and soon afterwards, but while Barmore still actually occupied the premises, the plaintiffs attempted to remove the building, and were prevented by the defendant, who claimed to own it. Under the circumstances, the right of removing this fixture, if it ever existed, was not lost by the delay.
The general rule has been laid down in many cases, that things which a lessee has annexed to the freehold, if movable at all, must be removed before the expiration of the tenancy. (1 Salk.,
368; 1 Atk., 477; 7 Taunt., 191; 1 Barn. Ad., 394; 2Barn. Cres., 76; 2 Mees. Wels., 450; 7 id., 14.) Without questioning at this time the force of the rule, an obvious qualification must be admitted where the tenancy is of an uncertain duration, and is liable to be terminated, by the happening of some event on which it depends, or by the act of the lessor, as in the case of a tenancy at will. Where the tenancy is of such a character, the supposed abandonment or gift of the fixture to the reversioner, on which the rule rests, can hardly be imputed to the tenant, until he has had a reasonable time to effect *Page 239 
the removal. (Ferard on Fixtures, 106, 107.) Another qualification rests more distinctly upon authority, to wit: That the right of removal is not lost so long as the tenant continues to occupy, although his term has expired. (Penton v. Robart,
2 East, 88.) In the case before us, Barmore was a tenant at will under Wynant, who had a lease for five years. They both surrendered those interests to the lessor, but Barmore continued to occupy, agreeing to quit when required by the lessor. This arrangement brought him into immediate relation with the original lessor, and in that relation he continued to be tenant at will, even down to the time when the plaintiffs attempted to remove, and were prevented from removing, the building. Upon these facts, it is quite clear that no rights were lost by acquiescence or delay. It should, moreover, be observed, that Barmore did not, in any arrangement with the owner of the premises, profess to abandon his right of removing the fixture. And if he had done so, it is not easy to see how he could thereby affect the plaintiffs, who had antecedently acquired a lien by force of the statute, and proceeded to judgment, execution and levy.
The only question which has occasioned any considerable doubt is, whether the building put up by Barmore was an erection which he had a right to remove, his tenancy being qualified by no agreement on that subject. He was the tenant of a large hotel and boarding-house, and, as accessory to the business of keeping the establishment, he put up a ball-room adjoining, sixty feet by thirty in its dimensions, built of wood. There was nothing in the mode of its annexation to the soil, or to the main edifice, which necessarily imparted to it the legal characteristic of immovability. It could be detached and taken away without injury to the reversion. Beyond all doubt, it would be real estate, as between vendor and vendee of the land, or between the heir and the executor of the owner. But the rule of law prevailing in those relations is by no means decisive of the present question.
In a somewhat recent case in the Supreme Court of this State, it was said by an able judge "that any person who has *Page 240 
a temporary interest in land, and who makes additions to it or improvements upon it, for the purpose of better use and enjoyment of it while such temporary interest continues, may, at any time before his right of enjoyment expires, rightfully remove such additions and improvements." (King v. Wilcomb, 7 Barb.,
266; Dubois v. Kelly, 10 id., 500.) The rule, as thus stated, is, I think, laid down somewhat too broadly. The adjudged cases, I am confident, do not sustain a doctrine so general. On the contrary, the general maxim of the law is, that whatever is fixed to the realty becomes a part of it, and partakes of all its incidents and properties. This is the rule, even in the relation of landlord and tenant. Many exceptions have been engrafted upon it, but the rule itself has not been reversed; and, therefore, it must not be lost sight of. (Ferard on Fixtures, 8.)
The building now in question was, in its nature, real estate. Admitting that under the law of fixtures it could be removed by the tenant and placed in another situation, it would still be real estate, unless fixed in its new location under circumstances like those which justified the removal from its original site. There are, in the books, many examples of movable fixtures, which become chattels the moment they are severed, and have none of the characteristics of land. That cannot be said in the present case. A building is, in its very nature, an annexation to land, and it becomes a chattel only by the application of some exceptional rule. The mode of annexation may be material when the question is one of departure from the general law in the particular relation of landlord and tenant, or the analogous one, in this respect, of tenant for life, and remainderman or reversioner.
I have looked at many cases on this subject, but I do not think it necessary or useful to cite them at large. The most comprehensive of the exceptions which they establish is that of fixtures put up for the purpose of trade or manufacture; and this exception has certainly been applied with great liberality. It has been held to include improvements on agricultural lands, which combined also some of the elements of *Page 241 
trade. It has also been extended to various occupations having an affinity or resemblance to trade, although hardly included in the usual definitions of that term. (Ferard on Fixtures, 61, 69,and notes; 20 John., 29; 4 Pick., 310; 2 East, 91; 7Taunt., 191.) The keeper of an inn or hotel, in some sense, exercises a trade. In the English bankrupt system he is a trader, being so expressly declared by statute. (6 Geo. IV, ch. 16, § 2.) Although his right to remove fixtures and erections put up by him as a tenant, for his own convenience or profit in that business, has not been settled by adjudication, yet I incline to think that the spirit of the decisions will carry us to that extent. Adopting that conclusion, as I do with some hesitation, it is decisive of the present question. The building in controversy was erected by the tenant of a hotel, because a ball-room, as he thought, would add to the attractions of his house as a place of resort, and to the profits of his business. So far as we know, he had no design of attaching it permanently to the freehold. The mode of annexation does not evince any such design. It follows that the plaintiffs acquired a lien, under the statute, for the price or value of the materials which they furnished to the tenant, who was the "owner," and that they also acquired a title by proceeding to a judgment and sale.
The judgment must be affirmed.