## BERNARD MULDOON *v.* WILLIAM PITT AND OTHERS.

Under the mechanics' lien law, for New York city (Laws of 1863, ch. 500), the "owner" intended is the owner of the erection, and not of the lands on which it is placed.

The lessee of premises in New York city, holding under a lease covenanting that no alterations should be made except by the written consent of the lessors, wished to make certain alterations, but the lessors refused permission unless they were made in a certain way. By the lessee's consent and direction, therefore, the lessors superintended the work and gave directions concerning it. · *Held,* that they did not thereby make themselves liable to the contractor who did the work, for an unpaid balance due him from the lessee.

APPEAL from a judgment of this court, entered on the report of a referee in a proceeding to foreclose a mechanic's lien.

The proceedings were had under L. 1863, ch. 500, providing for mechanics' liens in the city of New York, and resulted in a judgment in favor of the plaintiff, from which defendants appealed to the court at general term.

The facts are stated in the opinion.

*Arnoux, Rich & Woodford,* for appellants.

*Comstock Bros.,* for respondent.

By THE COURT.*—DALY, CH. J.—There was no ground whatever for the judgment against the appellants Charles and William Pitt. They were the owners of the premises. The defendant Vierkant applied to them for a lease of the premises for a Russian bathing establishment. The premises were not fitted for such a purpose at the time, and Vierkant was to put up the requisite building and make the necessary alterations at his own expense. The defendants, at first, did not want to let the premises for such a purpose, but finally consented, upon Vierkant agreeing to do whatever they wanted in the new building he was to erect; to build such a roof as they desired, and to

---

* Present, DALY, Ch. J., LARREMORE and J. F. DALY, JJ

put up the building and make the necessary alterations, subject to the approval of one of them, William Pitt. Vierkant was to make the plan and submit it to William Pitt, and if it suited him, it was to be " all right."

With this understanding, they leased the premises to him for a period of five years, and he made a contract with the plaintiff to do the necessary work. The lease contained a covenant that no alterations should be made in the premises, except in the basement floor and cellar, without the written consent of the appellants. The plaintiff himself testified that he was employed by Vierkant, he (the plaintiff) " thinking " at the time that " he was the man who had the right to do so." A Russian bath-house was to be built in the rear of the lot. Vierkant gave the plaintiff a description of it, and asked what it would cost; and the plaintiff said about $1,800 or $1,900. The plaintiff asked him how he was going to pay for it, and Vierkant replied that if the plaintiff wanted four or five hundred dollars a week, he would let him have it as the work progressed.

The day after the plaintiff commenced the work, William Pitt came to the premises, and told the plaintiff that Vierkant had not submitted the plan to him, and that he did not know anything about how the bath-house was to be built; that the work must be done to suit him, and that he had all to say about it; that it must be done to suit him, or that it could not be done at all. An interview had taken place between William Pitt and Vierkant, in which Pitt told him how he must build; and that before he built, he must show him (Pitt) the plan. Pitt indicated the kind of roof that must be built, and Vierkant told him that he was inexperienced; that he had never built anything in this country, and asked him if he would not go to the premises sometimes, overlook the work, and see that it was well done, as he (Pitt) knew better than he did. And accordingly Pitt went there generally twice a day. Both he and Vierkant gave directions, but Pitt was the " principal man " in doing so.

After Pitt had informed the plaintiff that the work must be done to suit him, the plaintiff spoke to Vierkant about it,

and the latter told him, "Let it go. We will do it to suit him." The plaintiff followed the plan agreed upon between himself and Vierkant, except where Pitt gave different directions. Vierkant was in and out nearly all the time, and all that Pitt did was done with Vierkant's approbation. Vierkant testified that he told the plaintiff, after the work was commenced, that if Pitt wanted any change made, to do it.

There is no conflict in the testimony in respect to the facts above stated. Both Vierkant and Pitt agree that the bath-house was to be built, and the alterations made, at the expense of Vierkant, the lessee; and that Pitt was not to pay for any part of the work. Vierkant, therefore, was the owner within the meaning of the lien law (*Ombony* v. *Jones*, 19 N. Y. 234; *Walker* v. *Paine*, 2 E. D. Smith, 662). The word *owner*, as was said by Judge Comstock, in the first case above quoted, " as used in the statute, obviously refers to the erection, and not to the land on which it is placed ; and if the land is owned by one person, and the building by another, it is only the title of the latter that can be affected by the lien." Here the contract was made by the plaintiff with Vierkant. He was the lessee. The bath-house was erected, and the alterations were made in the premises for him, and at his expense. He and not the lessors were to pay for what was done; and all that the lien could reach was his right and title to the use and enjoyment of the premises for the period during which they were demised to him.

No alterations could be made, by the covenants in the lease, without the written consent of the lessors. They had, therefore, the right to say, that what was to be done, must be done to suit them, and Vierkant not only recognized their right to limit or direct what he might do, but the personal supervision which one of them gave to the work during its progress, was done at Vierkant's express request, and for the protection of his interest, as well as the interest of the appellants, as he was a foreigner, who had no experience in building in this country. The judgment, therefore, in respect to appellants must be reversed.

Judgment reversed.