## DOSTAL v. McCADDON *et al.*

1. Fixtures: RIGHT OF REMOVAL OF TRADE FIXTURES. While fixtures erected for the purposes of trade may be removed by the tenant upon or prior to the termination of his lease, he cannot, subsequently, exercise this right as against a purchaser of the premises without notice of his claim. The case of *Wilgus & Ewing* v. *Getting & Giddings*, 21 Iowa, 177, distinguished from the present one.

2. ── *Semble*, that the tenant cannot in any case exercise this right after he has surrendered possession ; that he cannot re-enter for the purpose of exercising it.

### *Appeal from Johnson District Court.*

#### SATURDAY, DECEMBER 8.

ACTION in chancery to restrain defendants from tearing down and removing a certain brick and stone vault and a bank safe contained therein, situated in a business building in Iowa City. It is shown by the evidence that J. H. Gower, as administrator of the estate of J. O. Gower, deceased, instituted an action of replevin to recover possession of the vaults and safe, and that defendant McCaddon, who was the sheriff, was about to execute a writ therein. To restrain this proceeding the action is brought. J. H. Gower is made a defendant. Upon a trial on the merits the relief prayed for by plaintiff was granted, and the property was declared to belong to him. Defendants appeal.

*Clark & Haddock* for the appellant.

*Fairall, Boal & Jackson* for the appellees.

BECK, Ch. J. — The facts of the case as disclosed by the record are these: In 1856, the vault was built by J. H.

Gower, Bros. & Co., who were then lessees of the premises upon which it is situated. The house was leased by them of a party who owned it, but who was merely a lessee of the ground. The vault was built of stone and brick within the house, but upon its own foundation and detached from the building. After the foundation was laid the safe was deposited in its proper place, and the walls of the vault built around it. It cannot be removed without tearing down the vault. J. H. Gower, Bros. & Co. occupied the premises until June, 1860, when they sold out to J. O. Gower & Co., who occupied the building until January, 1861. About this time the ownership of the ground and building became vested in one party. It was afterward occupied by the Iowa City branch of the State Bank; the precise time is not shown. The bank was succeeded in its occupancy by parties who used the building for mercantile purposes. Of whom these various tenants rented does not clearly appear in the evidence. We infer that after the Gowers ceased to use the building it was leased to the occupants by the owner. Sometime prior to 1866, the precise date not being shown, Berryhill purchased the property, and thereupon leased it to parties who used it as a store room. The different tenants used the vault and safe with the permission of defendant Gower, from whom they obtained the keys and receipted to him for their return. J. O. Gower died in 1865, and the vault and safe were entered upon the inventory of the assets of his estate. In April, 1866, they were advertised for sale as property of the estate. September 10, 1866, plaintiff purchased the real property of Berryhill. Neither of those parties knew of Gower's claim to the safe and vault, and it appears that the supposition that it was a part of the building caused plaintiff to put a higher estimate upon the value of the property than he otherwise would have done.

I. Without entering into a discussion as to the character

of the vault and safe, we shall, as they are so regarded by counsel of both parties, consider them as fixtures erected for the purpose of carrying on the banking business for which the house was used until the Iowa City Branch Bank ceased to occupy it; they will come under the denomination of trade fixtures in the view we shall take of the case. We consider it as established by the evidence that the Gowers' lease of the building expired before Berryhill purchased the property — certainly at that time. It also clearly appears that neither plaintiff nor his immediate grantor, Berryhill, had actual notice of Gower's claim. We may appropriately inquire right here, whether they had constructive notice, or whether such facts are shown by the evidence as would be sufficient to put the purchaser upon inquiry. In the first place, we have before us no facts upon which the law will presume notice to either of the last-named parties. The fact that Gower retained the possession of or control over the keys does not appear to have been known to them, and they had no intimation that the tenants in possession of the house used the vault under permission of Gower. The safe and vault were not necessary for the business carried on in the house when plaintiff purchased — they were not trade fixtures demanded by such business.

The fact that they were found in the house when plaintiff purchased would not be sufficient to put him upon inquiry as to their ownership. In truth, he would rather be authorized to presume that no such claim as is set up by Gower existed. They were not used as trade fixtures for the purpose for which they were adapted, and he therefore had no reason to inquire whether they were claimed as such by the tenant or any other person. We conclude, therefore, that plaintiff is not chargeable with notice of Gower's claim.

We have, therefore, the case of trade fixtures claimed by a tenant after the expiration of his lease and the termina-

Dostal v. McCaddon.

tion of his possession of the property against a purchaser without notice of his claim.

Chattels annexed to the freehold, either by the owner or tenant, acquire the character of fixtures and become incidents to the realty, and pass by conveyances thereof. But there is an exception to the rule in favor of industry. Fixtures that are erected for the purpose of trade may be removed by the tenant upon or prior to the expiration of his term or before he has surrendered possession of the land. The right cannot be exercised after he has surrendered possession; he cannot re-enter for the purpose of exercising it. The rule and exception as here stated are supported by a great number of cases, with but very few conflicting decisions. *Van Ness* v. *Picard*, 2 Pet. 137; *Mason* v. *Finn*, 13 Ill. 324; *Moore* v. *Smith*, 24 id. 512; *Davis* v. *Moss*, 38 Penn. 346; *Omboney & Dain* v. *Jones*, 19 N. Y. 234; *Richtmeyer* v. *Morse*, 40 id. 349; *Stockwell* v. *Marks*, 17 Maure, 455; *Shepard* v. *Spaulding*, 9 Metc. 416; *The State* v. *Elliott*, 11 N. H. 540; *White* v. *Arndt*, 1 Whart. 91.

II. *Wilgus & Ewing* v. *Gettings & Giddings*, 21 Iowa, 177, will not be found to conflict with the rule above announced. In that case it is held upon the peculiar facts that the tenants made the improvements under a license of the owner of the realty, and as the claimants of the property had full and actual notice of the tenants' rights, with other circumstances entitled to consideration by a court of equity, they could not recover against the tenants. The case is not within the rule for another reason. The tenant who erected the fixtures was held to be a tenant at will, and it does not appear that this tenancy and the possession under it had been terminated.

Neither is *Northern Central Railway Company* v. *Canton Company*, 30 Md. 347, cited by defendant's counsel, in opposition to the doctrines we have just announced. It is held that if a structure be erected on the land of another at

the cost of the builder and "for his own exclusive use as disconnected with the use of the land," and with the knowledge and assent of the owner, it does not pass with the land, but is the personal chattel of the tenant. It is also said that another exception to the rule we have above announced arises when the tenant holds by a license, revocable at the will of the landlord, which is terminative without previous notice. See *Omboney & Dain* v. *Jones,* 19 N. Y. 234 (238), cited *supra.* In such a case injustice would be wrought by the application of the rule, whereby the tenant would have no opportunity to remove the fixtures, and would be deprived of his property at the mere caprice of another. The case before us does not come within the doctrines of either of the authorities last cited.

III. Whether the rules we adopt as the law of this case may be modified, as between the tenant and grantee of the landlord under whom he held the premises, by the fact that the latter has notice of the nature of the property and the claim of the former, which is urged by defendant's counsel, we need not discuss. As we have before stated, plaintiff did not have such notice, but bought the property in the belief and with the understanding that the fixtures in question were a part of the realty and in entire ignorance of Gower's claim.

In the light of the well-sustained doctrines we have briefly presented, we conclude that the judgment of the district court is correct.

Affirmed.