# Cases

# FIRST DEPARTMENT,

AT

# GENERAL TERM,

December, 1879.

---

## CLARENCE H. LIVINGSTON, RESPONDENT, *v.* HERMAN SULZER AND AUGUSTA SULZER AND OTHERS, APPELLANTS.

*Lease — covenant to pay the tenant the value of the building erected by him — right of the tenant to the amount awarded for the building when it is taken by right of eminent domain — what are fixtures, as between landlord and tenant.*

The plaintiff, who owned a life estate in certain land, leased the same on May 1, 1867, to one Dowdney, for five years, at the annual rent of $1,500, and agreed that Dowdney should have the privilege of renewing the lease at the annual rent of $2,500. It was also agreed that if Dowdney should, with the plaintiff's approval, erect any building upon the premises, the plaintiff would pay for the same at a fair valuation at the end of the term, and keep his life insured for a sum equal to such value, and assign the policy to Dowdney. September 12th, 1867, Dowdney assigned the lease to Sulzer. On December 12th, 1868, plaintiff and Sulzer entered into an agreement, reciting the former lease and its terms, the assignment to Sulzer, and that plaintiff had had his life insured and the policy assigned to Sulzer, and authorized the latter in case plaintiff failed to pay any premium, to pay it himself, and deduct it from the rent. In May, 1872, the renewal lease provided for in the original was given. It contained all the provisions of the former lease, except the renewal clause, including the provision as to the payment for buildings erected, the premises being described as in the original

lease, with the addition of a clause "excepting such portion of said property as is owned by the party of the second part." In 1868, Sulzer had erected a large building on the premises for the purpose of carrying on the business of selling lager beer, etc., and in 1875 the whole of the premises and the building were taken by the city for a public park, the value of the land being awarded to the plaintiff and those entitled in remainder, and $25,000 being awarded for the building to the assignees of Sulzer.

In an action by the plaintiff to recover the amount awarded for the building which had been paid into court, *held,* that the buildings erected were such as were contemplated by the lease.

That the plaintiff's approval thereof was sufficiently shown by his agreement with Sulzer, after the assignment of the lease to the latter, and by the terms of the renewal lease given after their erection.

That the lessee's right to be paid their fair value at the expiration of his term was not effected by his taking a renewal of the lease.

That the assignees of Sulzer were entitled to the whole amount awarded for the buildings.

What fixtures, erected by the tenant for the purposes of his business, are removable by him at the expiration of his term, considered.

How far the parties in a proceeding to take lands are bound, as between themselves, by the report of the commissioners, after it has been confirmed by the court, considered.

APPEAL from a judgment in favor of the plaintiff, entered on the report of a referee.

*Henry Parsons* and *Merritt E. Sawyer,* for the appellants.

*Paul Tucker,* for the respondent.

DAVIS, P. J.:

The plaintiff in this action, under the will of his father, was owner of a life estate, for his own life, in the premises described in the complaint, with remainder over to his surviving issue, or, in default of such issue, to several of the parties named as defendants in the action. On the first day of May, 1867, he demised the said premises to one Abraham Dowdney, for a term of five years, at an annual rent of $1,500, payable quarterly in advance. In that lease it was covenanted that, at the expiration of the term thereby demised, the party of the second part shall have the privilege of renewing the lease for a further term of five years, at the rate of $2,500 per year, upon the same conditions as were therein contained. Among other provisions of the

lease, it was agreed that " in case the party of the second part erect any new buildings, with the approval of the party of the first part, upon said premises, during the term of this lease, the party of the first part agrees to pay for the same at a fair valuation, at the end of said term, and to keep his life insured at an amount equal to the value of said buildings, said insurance to be assigned to the party of the second part."

On the 12th of September the said Dowdney assigned the lease to one Charles Sulzer. On the 12th of December following, the plaintiff entered into an agreement with the assignee, Charles Sulzer, in which the lease of May 1, 1867, is recited as a lease of the premises to Dowdney, for the term of five years from the 1st of May, 1867, with the privilege to said Dowdney of a renewal thereof for a further term of five years. It also recites the assignment of Dowdney to Sulzer. It is then further recited that the plaintiff, in order to secure the full enjoyment of said lease to the party of the second part, and from all loss or damage that might arise from the termination of said lease sooner than the term mentioned therein, to wit, ten years, by the death of said Livingston, has insured said party of the first part's life, and assigned the policy to said party of the second part.

It is then provided " that in case the said party of the first part shall neglect or refuse to pay the premium on said policy of insurance, from time to time, as it shall fall due, then the said party of the second part shall and may pay the same and deduct the same from the rent to be paid under said lease, and the said premium, when so paid, shall be considered and allowed said Sulzer as so much paid on account of rent under said lease."

By this agreement the rights of Sulzer in the original lease were fully recognized, and the assignment to him ratified.

On the first day of May, 1872, the plaintiff executed to Sulzer the renewal lease, provided for in the original lease, for the additional term of five years, at the rate of $2,500. This lease described the premises in the exact language of the former lease, but adds thereto an exception in these words : " excepting such portion of said property as is owned by the party of the second part." The lease contains the same provisions, in all respects, as the former lease, excepting the renewal clause, and it provides.

in the same language, for the payment by the plaintiff for new buildings erected with his approval during the term of the lease, and for the insurance of the life of the plaintiff, and the assignment of the policy to the lessee.

In 1868 Charles Sulzer, while holding under the first lease, erected a large building on the premises for the purpose of carrying on the business of selling lager beer, etc., and for accommodating dancers and other visitors as a place of public resort. This structure was of wood, upon a brick and stone foundation, with a frontage of 100 feet and a width of seventy-five feet. The foundation was sunk into the ground on three sides, and being on a side hill, the foundation wall on the easterly side was much higher than the other walls. The earth within the walls was not excavated, but was left on a level with the surface outside. Within the walls and below the wooden structure a dining-room, kitchens, closets, etc., were constructed, in which were placed ranges, boilers, gas fittings, and other fixtures used for the purposes of the building, all of which were on a floor laid above the surface of the ground. The appellants became the owners of all the rights and interest of Charles Sulzer in the demised premises and in the buildings, by assignment from him made in June, 1876.

In the year 1875, proceedings were instituted by the city of New York to acquire title to the whole of the demised premises, and the buildings and improvements thereon, for a public park. In such proceedings damages were awarded to the plaintiff and the remaindermen, for the value of the land, by commissioners of estimate and assessment duly appointed by the Supreme Court, and an award of $25,000 was made to the appellants for the value of their buildings and improvements. This award was afterwards duly confirmed by the court, and after such confirmation the plaintiff commenced this action, claiming that the said award of $25,000 should be adjudged to belong to him and the persons having an interest in the remainder, and asking judgment that it be paid over by the city for their use and benefit. Pending the action the money was paid into court to abide the event.

The referee found, in addition to the several facts above stated,

and certain facts relating to other structures on the premises, that all the buildings so erected by said Charles Sulzer, and all the improvements and additions made by him on said premises were so erected and made for the purpose of enabling the said Charles Sulzer to carry on, on said premises, the trade, calling or business of a keeper of a pleasure ground and lager beer garden, and to afford to pleasure parties visiting said premises an opportunity for amusements and recreation by dancing and otherwise, and that all said buildings, improvements and additions were necessary and proper for the purpose of carrying on said trade, business or calling successfully.

He also found that there was no evidence before him that the plaintiff ever approved of the erection of any of the buildings by said Charles Sulzer. He also found in substance that the wooden structures erected by said Charles Sulzer were of the value of two-thirds of said award of $25,000, and that the foundation of the principal building, and all therein below the floor of the wooden structure, was of the value of one-third of the said award.

As conclusions of law he found, in substance, that the appellants were the owners of all the buildings and erections put on said premises by said Charles Sulzer, and had the right to remove the same, "except the stone walls comprising the substructure of the main dancing platform, and what was inclosed within said walls and below said dancing platform; but that as to said stone walls and what was inclosed therein, as aforesaid, the same belong to the plaintiff" and his remaindermen, according to their respective rights and interests therein.

It is obvious that the learned referee disposed of the case altogether upon his views of the law of fixtures, as between landlord and tenant, where property is leased for the purposes of trade or business.

It must be regarded as settled by *Ombony* v. *Jones* (19 N. Y., 234), that erections by the tenant, for such uses as those in this case, come within the rule of the right of removal during the term of the lease, whether it contains provisions in respect thereto or not. The distinction which the referee has made as to the walls on which the buildings stood seems to be justified by the remark of GROVER, J., in his opinion in that case. But there is nothing, in

our judgment, assuming the distinction to be right, so far as related to the walls themselves, to sustain the conclusion of the referee, that everything within those walls and below the floor was real estate belonging to the plaintiff. He finds in substance that within the walls and below the first floor of the wooden structure were the rooms known as dining-room, kitchens, closets, etc., and that "within said rooms were certain ranges, boilers and the brick work sustaining them, certain plumbing, gas fittings and other fixtures, all erected by said Charles Sulzer for the purposes of and used in his business."

This finding is not very definite as to the particular character of the things said to be within the rooms; but it is stated that they were all placed there by Sulzer for the purposes of the business carried on in the premises. These rooms being on a side hill were above the surface of the ground, lighted as is distinctly found, by windows which "were not obscured by any surrounding earth." We are at loss to see why the ranges and boilers, and other fixtures, would not have been properly removable by an outgoing tenant who had placed them there for the purposes of trade or business. There is no finding of their value separately, and no means therefore of correcting the error of the referee in respect to them by deductions from the judgment; but for the error in allowing their value to the plaintiff as his property, there must necessarily be a new trial of the case if there were no other error to be considered.

But we think this case was not disposed of by the learned referee upon the principles and grounds that ought to control it.

It appears by necessary implication, from the first lease, that the property was leased with the intention that it should be used by the lessee for such or similar purposes as those to which it was afterwards applied; and, with a view to facilitate such uses and purposes, it was covenanted that the lessor, at the expiration of the term, should pay for all new buildings erected thereon by the lessee, with his approval, at a fair valuation. This covenant was made with a view also to the privilege of renewal for a further term of five years which the lease secured to the tenant. It was not the intention that this renewal should have the effect to cut off the right of the tenant to be paid for such new buildings as

had been erected with the landlord's approval, but it was obviously the design that if a renewal was made for the additional term, the time for the payment for such structures, at a fair valuation, would also be extended.

The learned referee finds that there is no evidence before him that the buildings were erected with the approval of the landlord.

We do not concur in that view of the evidence, for it appears that the landlord ratified the assignment of the lease to Charles Sulzer, and, by express covenant, provided for securing Sulzer against all injury from his decease during the term, by the insurance of his life, which Sulzer should be at liberty to keep up out of the rents in case of default on his part, to pay the premium ; and after Sulzer, under the lease, had erected and occupied these buildings for a period of about four years, on renewing the lease he expressly excepted from the lease " such portion of said property as is owned by the party of the second part." This exception was inserted to prevent the words, " with the buildings thereon erected," contained in the description of the premises demised, from operating to indicate an intention of surrendering all the tenants' title to the landlord in such structures as he had himself placed on the property. That exception plainly takes the case out of *Loughran* v. *Ross*, 45 N. Y., 792, and it forcibly recognizes the right of the tenant, in some portions of the property, which would otherwise have been covered by the descriptive language.

The just and equitable construction is, that the landlord intended to preserve to the tenant his rights in the new buildings that had been erected for the purposes of the business carried on on the premises, and that construction seems to us, of necessity, to imply that such buildings were erected with his approval. There is nothing in the language of the lease to demand a written or other formal approval. It is sufficient that there was an approval of some sort on the part of the landlord ; and we think that may properly be found not only in the exception contained in the renewal lease, but also in the repetition of the provision contained in the first lease, of the obligation to pay at the end of the term, at a fair valuation, for such buildings as should have been erected, with the approval of the landlord. It may also be found

in the covenant to insure the landlord's life for the benefit of the tenant, coupled with the fact that the policy so taken out by the landlord and assigned to the tenant is, in immediate connection, in both leases, with the provision for the payment of buildings erected, with the approval of the landlord; and his action in entering into the new agreement with Charles Sulzer, in respect to such insurance, and in performing the requirements of that covenant, is strongly indicative of his assent to the erection of the buildings in question.

As we look at the facts of the case, it seems to us that, at the time the city took possession of the property for public use, the tenant must be regarded as the legal and equitable owner of the structures which he had placed upon the property. The covenant, in the two leases just referred to, relates to the whole building, including, as well, the foundations as the superstructure, and there seems to us no reason to doubt that, at the expiration of the renewal-lease, the tenants would have the right to claim payment for the entire building at such valuation as is provided for in the lease. But the intervention of the proceedings, under which the property has been taken by the city, cuts off the exercise of such rights. The property must be taken to be, so far as relates to the respective rights of the parties, precisely as it was at the time of the taking; and, under the provisions of the lease, the rights of the tenant, as owner of the buildings erected by him, is distinctly recognized and continued until they cease by a valuation and payment at the end of the term.

Looking at the case in this light, we see no reason to doubt that the commissioners estimated correctly the respective interests of the parties in the premises. They gave, as it appears, to the plaintiff and his remainder-men the full value of the property, independently of the buildings; they gave to the appellants the value of such buildings, doubtless, because they concluded that the ownership was in them.

We are unable to see why justice has not been done, and we think the complaint should have been dismissed by the learned referee, with costs.

We are not disposed to pass upon the question whether the decision of the commissioners, followed by the confirmation of the

Supreme Court, was not conclusive upon the rights of the parties, as held by the Court of Appeals in the *Matter of the Department of Public Parks* (73 N. Y., 565). It may be difficult to distinguish this case from that, and probably it is our duty to apply the rule there established as a final bar to a recovery in this case.

We prefer, however, to put the case upon the grounds above suggested.

It follows that the judgment should be reversed.

BRADY, J., concurred.

Present — DAVIS, P. J., and BRADY, J.

Judgment reversed, and new trial ordered, costs to abide event.