Powers v. Dennison et als.

---

DAVID POWERS v. LUCIUS DENNISON, CHARLES WATSON, LEONARD WATSON AND HILIMAN ALLARD.

*Fixtures. Right of mortgagee and grantee to erections made upon land by parol license from the grantor. Notice.*

If one erect a building for his own use upon the land of another by virtue of a parol license from the owner, with the understanding that the licensee is to remove it upon notice from the owner of the land, and the building is annexed to the freehold so as to be a fixture, a subsequent mortgagee without notice of such license, will, upon the expiration of a decree of foreclosure of his mortgage, and after he has entered into possession of the premises, be entitled to the *building,* as well as the land, and may maintain trespass against the person erecting the building, if he then remove it.

And if one purchase the title of such a mortgagee after the decree of foreclosure has expired, but before possession has been obtained under the decree, he will hold all the title to the building which the mortgagee had, and will not be affected by his own knowledge that the building was erected under such a license.

A dwelling erected under a parol license upon the land of another over a cellar, only partially dug and stoned, is a fixture, and passes by deed with the land to a *bona fide* purchaser without notice of the license.

The mere fact, that the licensee occupies such a building, is not notice to the world of his license or his claim of title thereunder, but merely of the fact that he is in possession.

The question whether a structure is to be regarded as a fixture, or not, is to be determined by its character and manner of erection, and not by the fact that it has been erected under a parol license from the owner of the land, or that its owner, as against the licensor, has the right to remove it.

TRESPASS for entering the plaintiff's close and removing a house. Plea, the general issue, with a notice that the defendants would rely upon the fact that the house belonged to the defendants and that they had a right to remove it, etc. The case was tried by jury, at the June Term, 1857,—POLAND, J., presiding.

The facts in the case, the request of the plaintiff to the court to charge the jury, and the charge of the court, are sufficiently set forth in the opinion of the court. The jury returned a verdict for the defendants, under the charge of the court, to which, and the refusal of the court to charge as requested, the plaintiff excepted.

*Peck & Colby*, for the plaintiff.

In the most favorable view that can be taken for the defendants, the building acquired the character of a fixture, and became an incident to the realty, such as descends to the heir, instead of going to the executor; *McKenna* v. *Hammond*, 3 Hill 331; *Leland* v. *Gassett*, 17 Vt. 404; and passes in all cases to the vendee of the land; *Colegate* v. *Dios Santios*, 2 B. & C. 76; *Preston* v. *Briggs*, 16 Vt. 124; *Dis Line* v. *Bellamy*, 13 N. H. 205; *Kittredge* v. *Wood*, 3 N. H. 506; *Kirwin* v. *Lunton*, 11 Har. &. J. 19; *Miller* v. *Plumb*, 6 Cow. 665; *English* v. *Fate*, 8 L. & M. 444; and becomes the property of a mortgagee; *Voorhies* v. *Freeman*, 2 W & S. 116; *Union Bank* v. *Emerson*, 15 Mass.; *Winslow* v. *Merchants' Ins. Co.*, 4 Met.; *Day* v. *Perkins*, 2 Sanford. Ch. 359; whether erected *prior* or *subsequent* to the mortgage; *Lyle* v. *Ducomb*, 5 Bin. 585; *Butler* v. *Page*, 7 Met. 40; *Corliss* v. *McLogin*, 29 Me. 119, in obedience to the simple rule, " *Quciquid plantatur solo, solo cedit.*

*T. Bartlett*, for the defendants.

The opinion of the court was delivered by

PIERPOINT, J. This was an action of tresspass for breaking and entering the plaintiff's close, and removing a house.

It appears from the case, that in the fall of 1849, one Aaron Smith was the owner of the land from which the house in question was removed; that said Smith then verbally licensed the defendants Dennison, and the Watsons to erect said house on his land, to be

removed at any time when said Smith should give them there months notice to do so.

That said defendant Allard, as the servant of the other defendants, in December, 1849, erected said house, and during the succeeding winter and spring so far completed it that he moved into it.

On the 16th day of February, 1850, said Smith executed a mortgage of said premises to Joel Trull, who afterwards, on the 15th of May, 1851, assigned the said mortgage to Charles Watson, one of the defendants.

On the 30th of November, 1850, the said Smith executed a mortgage to Beckwith & Townsend of the same land, and on the 20th of March, 1851, he made another mortgage to M. W. Newell.

Beckwith & Townsend brought their bill in chancery, returnable to the June Term of the Caledonia county court, 1851, against said Smith, Watson, Allard, Trull and Newell, praying to be permitted to redeem the mortgages, prior to theirs, and to foreclose the mortgagor and subsequent mortgagees, and also the said Allard, who was alleged in the bill to claim some interest in the premises derived from said Smith, and at the December Term of said court, in 1851, obtained a decree according to the prayer of their bill. They redeemed the prior mortgages, but the other defendants did not redeem according to said decree, by the 15th day of May, 1852, the time limited therein, and on that day the decree became absolute.

On the 22d day of May, 1852, the said Beckwith & Townsend conveyed the premises to the plaintiff On the 19th of November, 1852, a writ of possession was issued on the said decree, in favor of Beckwith & Townsend, and the plaintiff was put in possession of said premises, and of said house, by virtue of it. On the second day thereafter, the said Allard and the other defendants entered upon the premises and removed the house, and it is for this act that this action is brought.

The plaintiff insisted that if the jury found the facts detailed in the exceptions as claimed by the defendants, still, he was entitled to recover on the ground that the house passed with the land to him, and that in any event, he was entitled to recover nominal damages, and requested the court so to charge the jury. The court declined so to charge, but instructed the jury that if they found

that Smith gave the license to the defendants, other than Allard, and that they erected the house and owned it, then they had a right to enter and remove it, and the plaintiff could not recover.

Under this state of facts the question arises, did the defendants or the plaintiff own this house at the time it was removed?

The jury have found the fact that the defendants erected the house on the land, under a license from Smith, and there can be no question that while Smith owned the land, and the said license continued unrevoked and in force, the defendants would have been justified in entering upon the premises, and removing the buildings, and as there are no facts tending to show that Smith, at any time, directly revoked or made any attempt to revoke such license, it necessarily continued in force down to the time of the acts complained of, unless the subsequent conveyance of the premises by Smith, and the proceedings of the grantees under Smith, had the effect to vary the rights of the defendants under such license, and vest the legal title to the house to the plaintiff. No question is made but the title to the land on which the house stood, was in the plaintiff, by virtue of his deeds from Beckwith & Townsend. The house in question was erected and standing over a cellar which was in an unfinished state, being partially dug and stoned, with nothing to indicate to a purchaser that it was not a permanent structure, and designed always to be occupied in its then present position. It would seem from the case, that this house was as much a fixture and a part of the freehold as any other dwelling house is.

The question whether a structure is to be regarded as a fixture, or not, is to be determined by its character and manner of erection, and not by the fact that it has been erected, and is owned by one not the owner of the soil on which it stands, or that such owner has the right to remove it.

It is not easy to see what difference it can make with this question, whether the house was erected on the land of another under a license and right to remove, or erected by the owner of the land and then sold with a right to remove. In the latter case, it would hardly be claimed that the property that was a fixture before the sale, became severed and ceased to be a fixture by means of the sale, any more than standing trees or stone in a quarry would cease

to be a part of the realty, upon the owners granting the right to sever and remove them. The rule in this case is not the same as that between landlord and tenant for the benefit of trade; the tenant may make certain erections, or fasten certain personal property to the freehold, and still have the right to remove them during the existence of his term; but even in that case, when the property is fixed to the freehold, it becomes a part of it. It is said, in *Lee* v. *Risdon*, 2 Eng. C. L. 69, that the right between landlord and tenant does not depend upon the principle that the articles continued in the state of chattels. Many of these articles, though originally goods and chattels, yet, when affixed by a tenant to the freehold, cease to be goods and chattels by becoming part of the freehold, and though it is in his power to reduce them to the state of goods and chattels again by severing them during his term, yet, until they are severed, they are a part of the freehold."

The same doctrine is recognized in *Preston* v. *Briggs*, 18 Vt. 124, so that as between landlord and tenant, it is immaterial whether the property be regarded as a part of the freehold or not; the right to recover it exists in either case, and the cases above cited are important in this connection only as showing that while the property is so attached to the freehold, it is regarded as a fixture, and a part of the freehold.

This right of the tenant to remove fixtures is an exception to the common law rule adopted from considerations of public policy, but neither the rule nor the reason exist in cases like the present. There is no principle of public policy to be subserved by fostering the claim of one man to the enjoyment and exercise of a right and interest in and over the real estate of another, at variance with the record title and apparent ownership. But, on the other hand, the policy of the law of this state is that the public records of the towns should show the true state of the titles to all the real estate within their limits.

It is held in Massachusetts, that the interest of a party erecting a building upon the land of another, under a license, is personal property, and may be treated as such, though he has no interest in the realty; 8 Pick. 402; 10 Pick. 540; but neither of these cases involved any questions as between the parties erecting the house and the owner of the land.

But it is *also* held in Mass., *Cook* v. *Stearns*, 11 Mass. 533, that licenses to do particular acts do not trench upon the policy of the law requiring contracts, as to the title or interest in real estate, to be by deed. "They amount to nothing more than an excuse for an act that would otherwise be a trespass." The court also say in that case that "if the defendants had a license from the former owner of the plaintiff's close to make the bank, dam and canal on their land, this extended only to the act done so as to save him from their action of trespass, but it did not carry with it any authority at any future time to enter upon the land."

As to so much of the license as was not executed, it was countermandable, and transferring the land to another would of itself be a countermand of the license. But whatever may be the rights or the nature of the interest in respect to such property, as between the original parties to the contract, it is sufficient to say, that it seems to be well settled that a building, erected as the one in question was, would become a fixture and a part of the freehold, so as to pass by the deed of the owner of the land to a *bona fide* purchaser without notice. This doctrine has been fully settled in Connecticut (10 Conn. 375). To hold a different doctrine would always leave the purchaser in doubt as to the true state of the title to the property which he was purchasing, or the nature and extent of the claims which third persons might have upon it. The town records would give him no light upon the subject; the principal value of the property might be in the buildings, and the purchase made solely with reference to them, and yet, after the bargain was completed, and the consideration paid, he might find that a third party owned the buildings, with the right to have them remain, or to remove them, for if the owner of the buildings may have the right to three months notice to remove them, as in the case at bar, there is no limit short of an absolute fee of the land that he might not stipulate for, but, if he only had the right to remove the buildings within a reasonable time, the consequences might be equally serious. If, in the case under consideration, Smith, instead of the parol license, had given the defendants an absolute deed of the land on which the house was erected, and they had erected the house without putting their deed upon record, it will not be claimed that they would have the right to enter or remove it, after the title

had passed into the hands of a purchaser without notice, and to say that the defendants have that right in this case, would be to give to a verbal license greater force and effect than is given to any unrecorded instrument with however much form and solemnity it may have been executed. But it is said the plaintiff had notice of the defendants' claim, at the time he purchased of Beckwith & Townsend.

This fact can not effect the *title* he took from Beckwick & Townsend. If the title was in them by force of their mortgage and decree, they having no knowledge of the defendants' claim, that title would pass to the plaintiff, notwithstanding such knowledge on *his* part and *he* would be in no manner affected by *his* knowledge of the defendant's claim; Story's Com. on Equity, 409, 410, and cases there cited.

Had then Beckwith & Townsend notice of the defendant's claim?

It appeared that Allard moved into the house in question in the spring of 1850, and B. & F. took their mortgages in November, 1850. It does not appear that Allard had charge of, or exercised any control over the premises, excepting that he had lived in the horse a few months prior to the execution of said deed, without any other act tending to show that he had, or claimed to have any title to the land or the house.

Whether this is such an open, exclusive and notorious possession as is notice to all the world that the person in possession of the house is there under a claim of title, as held in *Rublee* v. *Mead*, 2 Vt. 544, it is not necessary for us now to determine.

It was said by Ch. J. WILLIAMS, in *Prince* v. *Case*, 10 Conn. 375, that a possession of this character " was only notice that a person was in possession, and of nothing more; it does not prove that he claimed title or that he was other than the tenant of the owner of the land."

Again, B. & T., when they brought a bill to foreclose their mortgages, made Allard a party alleging that he was in possession, claiming some right under Smith.

Charles Watson, one of the defendants, and one who is now claiming to own the house, was also a party to that bill and had knowledge of the decree by which Allard, the party in possession, was foreclosed of all right in the premises. But as before said, it

is not necessary to pass upon this question, as the title of Beckwith & Townsend to the premises does not depend alone upon the deed from Smith, because by redeeming the mortgage to Trull, dated the 16th of February, 1850, under their decree they stand in the same relation to the defendants that Trull would have stood if he had foreclosed his mortgage, and although the Trull mortgage was executed after the license to erect the house was granted, and after the frame was erected, still, Allard had, at that time, no such open and notorious possession as would be notice to the world that he was then claiming title, and would require a purchaser to inquire into the right or contract under which he was at work upon a frame standing on his neighbor's farm; to hold that he had, would be to render it unsafe for a purchaser of a farm to take his deed until he had ascertained from every employee upon it, whether or not they were then claiming title against the owner of the land.

We think, therefore, that the title to the house in question was in Beckwith & Townsend, and passed to the plaintiff by their deed to him, and that the defendants were tresspassers in removing it.

Judgment of the county court reversed and the case remanded.