NicholsoN, C. J.,
delivered the opinion of the Court.
W. C. McDavid died in Dyer county, Tenn., in 1858, the owner of an interest of one-fourth of a steam saw-mill, with all its machinery and appendages. The only question in the case before us is, whether his interest in the saw-mill descended to his heirs as realty, or whether it went to his personal representative as personalty.
The facts, as proven by two of the part owners ■of the mill, are as follows:
*96 The mill was erected on W. G. McDavid’s land by W. C. McDavid, A. R. McKnight, W. N. McKnight, and A. C. Crockett, equal partners, each owning one-fourth. The understanding with W. C. McDavid was, that he furnished the mill-yard as a lease for five years, or as long as the partners wished to run it there. The mill, etc., however, was not to be esteemed a fixture, but the owners could remove it when and where they should think proper. W. C. McDavid never considered the mill a fixture.
The building was a frame, 24 by 64 feet, one story of 10 feet, the frame resting upon wooden blocks.
By the common law everything that was affixed to the freehold was subject to the law governing the freehold. The result of a long continued system of judicial legislation is, that the right of removal of fixtures may now be regarded as the general rule, instead of the exception. The common law rule is relaxed much more readily in favor of tenants, who have affixed things to the freehold, than in cases arising between executor and heirs, or vendor and vendee. In regard to the former, it may be laid down, as a general rule, that things which the tenant has affixed to the freehold for the purposes of trade or manufactures may be removed when the removal is not conti’ary to any prevailing usage, or does not cause any material injury to the estate, and which can be removed without losing their essential character or value as personal chattels, 2 Kent, 409. But, in the case before us, the question is assumed to be between the executor and heir, and, in such case as already intimated, *97 the common law rule obtains with the most rigor in favor of the inheritance, and against the right to consider as a personal chattel anything which has been affixed to the freehold. Mr. Kent says that the character of the property, whether personal or real, in respect to fixtures is governed very much by the intention of the owner, and the purposes to which the erection was to be applied. And in a late case decided in Pennsylvania, the Court said: “The question of fixture or not depends on the nature and character of the act by which the structure was put in place, the policy of the law connected with its purpose, and the intention of those concerned in the act.” 1 Amer. Rep., 372.
Mr. Redfield (vol. 2, p. 146) lays it down as an established rule, in controversies between the executor and heir, “that nothing which was erected for the permanent use and advantage of the land, and which, at the time of its erection, was intended to remain permanently on, or attached to, the soil, can ever be removed by the executor.”
Mr. "Washburn (vol. 1, p. 16,) after stating the rule laid down by Mr. Redfield, as equally applicable between executor and heir, vendor and vendee, mortgagor and mortgagee, adds: “On the other hand, machines and the like, which may be used in any other building, as well as that in which they are placed, such as carding machines in a factory, are ordinarily deemed to be personal chattels, though fastened securely to the freehold, if the same can be removed without material injury to the freehold. It is stated as a rule of law in *98 respect to mills and manufactories, that, in the absence of agreement or custom, anything that can be removed without essential injury to itself or the freehold, is a chattel between the purchaser of the realty and the mortgagee of the personalty.” And he says further: “It may be stated, that whether a thing which may be a fixture becomes a part of the realty by annexing it, depends, as a general proposition, on the intention with which it is done.” In the case of Degraffenreid v. Scruggs, 4 Hum., 453; Judge Green says, that while the common law rule has been greatly relaxed in favor of tenants, and in relation to fixtures erected for the purposes of trade, the original rule prevails as between vendor and vendee; whereas, in Pillow v. Love, 5 Hay., 10, Judge Haywood held, that “as between heir and executor, modern notions are far more liberalized and accommodated to the ordinary purposes of those who carry on business than formerly.”
From a careful examination of the authorities, which are almost innumerable and entirely irreconcilable, we are satisfied to follow the rule' laid down by Mr. "Wash-burn, as furnishing the best guide in determining the .several cases as they arise — that is, to look first to the intention with which the thing, which may be a fixture by annexing it to the freehold, was annexed, and if it is found that it was. the intention of the owner of the freehold to make the erection for the permanent use and advantage of the land, and. to remain permanently attached to the soil, such erection is to be regarded as part of the realty. But if the erection is not made with the view of a permanent ad *99 vantage to tbe land, but for purposes of trade or manufacturing, the erection will be regarded as a chattel, unless a- contrary intention is made to appear. This we understand to be the substance of the current of authorities on the question of fixtures.
The only fact in the case before us on which dt can be insisted that the steam mill belonged to the heirs as realty, is, that the building was erected on the land of the intestate. But the proof is clear that it was not intended to remain permanently on, or attached to, .the soil. . It was erected by four partners under a lease of the land, with the agreement that it was to be removed whenever they thought proper. It was erected for manufacturing purposes, and not with the view of giving additional value to the land. The owner of the land did not agree to its erection as a permanent improvement, that was to remain on the land, nor did he, at any time, regard it in any other light than as personal property, belonging to the four partners.
The application of the rule stated settles the question, that the interest of the intestate in the mill property was personalty and not realty.
The Chancellor so held, and we affirm his decree.