### E. M. ROWAND v. PETER ANDERSON, *et al.*

1. FENCE, *When a Fixture.* A fence built by one person upon the land of another, under a parol license or agreement that it might be removed at the will of the builder, becomes a fixture which will pass with a grant of the land to a *bona fide* purchaser without notice of the adverse title to such fence.

2. PAROL AGREEMENT, *Not Binding on Vendee without Notice.* The legal effect of attaching an improvement of a permanent character to land may be controlled by the agreement of the parties as between themselves and those who have knowledge of such agreement; but a parol agreement cannot be sustained, or held to be binding upon a subsequent vendee who had no notice of the parol agreement under which the structure was annexed to the land.

3. FACTS, *Not Giving Notice.* Under the facts stated in this case, *held*, that the location of the fence and its use were not sufficient to reasonably excite inquiry regarding the ownership of the fence, nor were they sufficient to charge the plaintiff with notice of the adverse interest therein.

*Error from Franklin District Court.*

ACTION brought by *E. M. Rowand* against *Peter Anderson* and another, to recover the value of a certain fence which was situate on his land, having been erected thereon by his vendor, and which was removed by the defendants, who claimed to

own the same. It was tried upon the following agreed statement of facts:

"On the 12th day of March, 1878, Charles S. Anderson purchased of S. O. Thacher, and S. O. Thacher conveyed to Anderson, the southeast quarter of section 31, town 15, range 20, in Franklin county. This land, as also the southwest quarter of the same section, also owned by Judge Thacher, was open, uncultivated prairie. Wishing to improve his lands, Anderson obtained permission from Judge Thacher to put a board fence on said southwest quarter, and a few feet from the line, parallel therewith, in order to protect a hedge to be planted on the line dividing between the two quarters. Judge Thacher consented verbally that the fence might be so built, and removed by said Anderson when he wished. And thereupon Anderson planted out the hedge on the line and cultivated it, and put up the fence at his own expense, six feet from the line and on Thacher's land, to protect the hedge, and there it remained until removed by defendants as hereinbefore stated. Anderson inclosed and cultivated his farm, using this fence as a part of his inclosure. On March 19, 1880, Judge Thacher conveyed the southwest quarter to Eli Circle. On October 10, 1881, Eli Circle conveyed said land to C. C. Mechem, and on May 1, 1882, C. C. Mechem conveyed said land to E. M. Rowand, plaintiff, who entered upon and improved the same. Before that, it had been fenced.

"On the first day of March, 1883, Chas. S. Anderson sold his farm, then inclosed and cultivated, as above stated, to the defendants, Peter Anderson and August Carlson. He sold the lands, fences, and whatsoever rights he had therein, but the deed contains no description farther than the land itself by its appropriate government subdivision, 'with the appurtenances.' They took possession from Chas. S. Anderson, and have continuously remained in possession thereof. None of the purchasers holding under Thacher had any knowledge of the agreement between Thacher and Chas. S. Anderson, and no notice thereof, unless the use of said fence and its situation imparted such notice.

"On April 25th, 1883, the defendants, Peter Anderson and August Carlson, removed the fence to their side of the line, leaving the hedge standing as a partition fence. They gave Rowand notice of their intention to remove the fence, but he did not consent. This action is brought to recover the value of the fence. The value of the fence when removed was sixty dollars."

On these facts the court, at the January Term, 1884, made and entered the following finding and judgment:

"The court having considered said facts and the argument of counsel thereon, doth find for the defendants; it is therefore considered, and adjudged by the court here, that the defendants go hence without day, and recover against said plaintiff their costs herein expended, taxed at $———, for which execution is awarded. To which conclusion and judgment the plaintiff then and there duly excepted."

The plaintiff brings the case here for review.

*H. P. Welsh*, for plaintiff in error.

*A. W. Benson*, for defendants in error.

The opinion of the court was delivered by

JOHNSTON, J.: The only question presented for our decision is, whether the fence, the value of which is sued for in this action, was owned by the plaintiff at the time of its removal by Peter Anderson and August Carlson. The fence was built by the defendant, Charles S. Anderson, upon the plaintiff's land when it was owned by S. O. Thacher, under a parol permission given by Thacher that the fence might be built a few feet over upon Thacher's land as a protection to a hedge which Anderson was about to plant on the dividing line between his own land and that of Thacher, and that it might be removed by Anderson whenever he desired. It remained upon the land about five years before its removal by the defendants. About two years after it was built, Thacher conveyed the land to one Circle, who in about eighteen months afterward conveyed to Mechem, who on May 1, 1882, conveyed to the plaintiff. In these conveyances no reservation was made of the fence, nor had any of the purchasers holding under Thacher any notice of the arrangement between Thacher and Anderson, unless the location and use to which the fence was put imparted notice of such arrangement.

Plaintiff claims that the fence was a fixture attached to the soil, which had become a part of the realty and passed with the grant of the land to him, be being a *bona fide* purchaser

without notice of the arrangement between Thacher and Anderson with respect to the erection and removal of the fence.

On the part of the defendants it is claimed that, as between Thacher and Anderson, the fence was personal property, and that its character was not changed by the subsequent conveyance of the land by Thacher, and did not pass as an incident of the land by the conveyance to the subsequent grantees. It is further claimed that the plaintiff was not a purchaser without notice; that the location of the fence and its use were sufficient notice that the defendants claimed an interest in it, and that that interest could have been ascertained by the inquiries that plaintiff was in law bound to make.

We cannot agree with the claim made by the defendants. The general rule of law is, that whatever is once actually annexed to the freehold becomes a part of it, and cannot afterward be removed except with the consent of the land-owner. In this case the fence was a substantial structure made of boards, and was actually annexed to the soil. All improvements of a permanent character, such as fences and buildings that are firmly attached to the soil, are generally to be regarded as permanent fixtures, and are presumed to belong to the owner of the soil to which they are attached. *Prima facie*, then, the fence was real estate belonging to the owner of the land on which it stood, and if the plaintiff had no knowledge or notice of the arrangement between Thacher and Anderson, he had a right to presume that the fence was intended as a permanent improvement, the title to which was in the owner of the land, and that a deed of the land from Mechem, his grantor, would carry with it the fence in question.

To the general rule there are exceptions. The agreement of the parties may, to a certain extent, supersede the general rule of law. An exception to the rule may also arise by reason of the relations that the parties to a controversy over the removal of fixtures sustain toward each other, and articles attached to the freehold which are considered as removable by one party, may be regarded as permanent fixtures with respect to another. There is considerable disagreement in the decisions of the courts,

with respect to how far the doctrine of modifying the general law of fixtures, by agreement, may be carried.   Some of the cases would seem to go to the extent of holding that parties may, by agreement, change the nature of property and make that which would otherwise be a part of the realty, personal property, and that a purchaser of the realty would be bound by such agreement, even though he had no notice of the same.   Others of them are to the effect that the distinctions between realty and personalty cannot be changed by the mere agreement of the parties, and that a purchaser of real estate, in the absence of notice to the contrary, has a right to suppose that he takes with it every appurtenance which, under the general rules of law, passes with the grant of land, and that he cannot be affected by any secret claim or private agreement of which he has had no notice.   It may be conceded that a party who, under a parol permission or license, places upon the land of another a permanent improvement, with the right, when he desires, to enter and take it therefrom, may exercise that right at any time before the permission or license is revoked by the landowner, and probably he has the right to enter to remove the fixture within a reasonable time after the revocation; and it would seem that any subsequent vendee who purchased the land with notice of such parol agreement or license, and of the interest of the parties in the fixture, would be bound by such agreement.   But we think this doctrine cannot be carried to the extent of binding or affecting injuriously third parties to whom the land has been conveyed without reservation, and to whose notice the parol license had not been brought.

While the legal effect of attaching a permanent improvement like a fence to the land of another, may be controlled by an agreement as between themselves and those who have knowledge of such agreement, yet we think the weight of authority is that such an annexation to the land becomes a fixture which cannot be held or removed as against a subsequent vendee who had no notice of the license or agreement under which it was annexed to the land.   In such case, the remedy of the licensee is against the licenser for the breach

of the executory agreement, by virtue of which the annexation was made. The policy of the law in our state is that every-thing appertaining to or affecting the title of real estate should appear in the public records. A purchaser of real estate has a right to suppose that upon an inspection of the records he will be able to ascertain the status of the title, and whether there are any existing incumbrances or claims in favor of third parties existing against it. Not so, however, if the theory contended for by defendants obtains.

As has been said, this doctrine—

"Would always leave the purchaser in doubt as to the true state of the title to the property which he was purchasing, or the nature and extent of the claims which third persons might have upon it. The town record would give him no light upon the subject. The principal value of the property might be in the buildings, and the purchase made solely with reference to them, and yet, after the bargain was completed and the con-sideration paid, he might find that a third party owned the buildings, with the right to have them remain or to remove them." (*Powers v. Dennison*, 30 Vt. 752.)

The court in the case cited in passing upon a question very similar to the one presented in this case, that is, where one had erected a building for his own use, upon the land of another, by virtue of a parol license from the owner, with the understanding that the licensee might remove it upon notice from the land-owner, and the land was subsequently conveyed, held that—

"Whatever may be the rights or the nature of the interest in respect to such property as between the original parties to the contract, it is sufficient to say that it seems to be well set-tled that a building erected as the one in question was, would become a fixture and a part of the freehold, so as to pass by the deed of the owner of the land to a *bona fide* purchaser without notice."

In this case, Anderson voluntarily placed his fence in such a situation as to lead those who had no knowledge or notice of his arrangement with Thacher, to believe that it belonged to him on whose land it was situate. If he desired to protect his fence from the effect of a conveyance of the land by

Thacher, he might have reduced the agreement between them to writing, and made it a matter of record. This he neglected to do, and if any one is to suffer loss by reason thereof, it should be the one who was negligent, rather than a subsequent vendee, who upon an examination of the records found no record and had no notice of this claim. In support of the views herein expressed, we cite the following authorities: *Prince v. Case,* 10 Conn. 375; *Powers v. Dennison,* 30 Vt. 752; *Wescott v. Delano,* 20 Wis. 541; Tiedeman on Real Property, 799; Hill on Fixtures, 19; *Houx v. Seat,* 26 Mo. 178; Tyler on the Law of Fixtures, 672; *Dostal v. McCadden,* 35 Iowa, 318; *Smith v. Carroll,* 4 G. Greene, 146; *Haven v. Emery,* 33 N. H. 66; *Eaves v. Estes,* 10 Kas. 314.

It is claimed, however, by the defendants, that the plaintiff was not a purchaser without notice. The only facts upon which this claim is based is the location of the fence and the use for which it was intended. There would be more force in this claim if the land upon which the fence stood had been open and uninclosed when the plaintiff purchased it, but it appears that it had been inclosed by a fence before it was conveyed by Mechem to the plaintiff; the hedge had been planted and growing for four years before that time upon the line dividing the two farms. The fence, therefore, was in the open possession of the plaintiff's grantor, and at that time the use for which Anderson originally intended it was not very apparent. We do not see anything so unusual in these facts and circumstances as to reasonably excite inquiry whether the fence belonged to another than the owner of the land. Nor do we think them sufficient to charge the plaintiff with notice of the adverse interest or title in the fence.

Entertaining these views, the judgment of the district court must be reversed, and the cause remanded with instructions to enter judgment in favor of the plaintiff for the value of the fence, which it was agreed was sixty dollars.

All the Justices concurring.