UNION BANK & TRUST COMPANY *et al. v.* FRED W. WOLF
COMPANY *et al.**

'(*Nashville.* December Term, 1904.)'

1. **FIXTURES.** Rights of innocent subsequent mortgagee prevail over rights of seller of machinery sold under conditional sale, when.

Where machinery for an ice factory was purchased under conditional sale, with title retained in the seller until paid for, a secret condition known only to the seller and the buyer, which machinery was bolted to the purchaser's building and connected with the other machinery already in the place at the time of the contract, and all so connected together as to form a complete and homogeneous system, and intended to be permanently attached to the freehold, with the knowledge, consent, and aid of the seller, subject to the failure to comply with the condition of payment; and while the machinery so purchased could be taken out of the building without serious injury thereto, but not without seriously impairing the efficiency of the plant, yet such machinery would be regarded as a part of the real estate, as between the seller thereof and a subsequent mortgagee of the plant without notice of the seller's rights.

Cases cited and approved: Degraffenreid v. Scruggs, 4 Hum., 451; Childress v. Wright, 2 Cold., 350; Cannon v. Hare, 1 Tenn. Chy., 22; Johnson v. Willinghby, 3 Tenn. Cas., 338; Malone v. State, 11 Lea, 701; Johnson v. Patterson, 13 Lea, 626; Hunt v. Iron Co., 97 Mass., 279; Thompson v. Vinton, 121 Mass., 139; Bank v. Exeter Works, 127 Mass., 542; Prince v. Case, 10 Conn., 375; Landon v. Platt, 34 Conn., 517; Powers v. Dennison, 30 Vt., 752;

---

*As to effect of agreement to prevent fixtures from becoming part of realty, including rights of mortgagees, see note to Muir v. Jones (Or.), 19 L. R. A., 441.

Davenport v. Shants, 43 Vt., 546; Tibbetts v. Horne, 65 N. H., 242; Bingholff v. Munzenmaier, 20 Iowa, 513, 518, 519; Stillman v. Flenniken, 58 Iowa, 450, 454; Rowand v. Anderson, 33 Kan., 264; Climer v. Wallace, 28 Mo., 556.

Cases cited, distinguished, and approved: Gaslight Co. v. State, 6 Cold., 310; Saunders v. Stallings, 5 Heis., 65, 70-73; McDavid v. Wood, 5 Heis., 95; Cubbins v. Ayres, 4 Lea, 329; Snowden v. Association, 7 Lea, 225, 229.

2. **MAXIM.** Party whose conduct results in consequential loss must bear that loss, when.

Where one of two innocent persons must suffer, that one whose conduct or act placed it in the power of a third party to impose upon or deceive another should bear the loss. (*Post, p.* 266.)

3. **REGISTRATION.** Of all liens and incumbrances on land.

The policy of our law in respect to real estate titles is opposed to secret liens and requires that the public records shall contain the evidence of all liens and incumbrances. (*Post, p.* 266.)

---

FROM DAVIDSON.

---

Appeal from the Chancery Court of Davidson County. —JOHN ALLISON, Chancellor.

STATEMENT OF FACTS MADE BY MR. JUSTICE NEIL.

Contest for priority between the seller of machinery, under a conditional sale, for an ice plant, and subsequent mortgagees of the same property, without notice, after it was attached to the plant.

The facts, so far as necessary to be stated, are as follows:

On the twenty-fourth of January, 1899, the Fred W. Wolf Company entered into a contract with the Consumers' Ice, Coal & Cold Storage Company, whereby the former sold to the latter machinery to the value of $14,600, payable in installments, evidenced by sundry promissory notes. By the terms of the contract the machinery was to remain the property of the selling company paid for. There still remains unpaid a balance of about $1,800.

The machinery consisted of a condenser, an engine, oil trap, all very heavy articles, and sundry pipes, necessary for the operation of an ice factory. The condenser and engine were placed upon brick foundations and bolted thereto. The oil trap was likewise bolted to the floor. The pipes were connected with the condenser, and thence, through the building, with other parts of the machinery of the plant which was already in place at the time the contract was made, the latter being a part of the old equipment of the factory. All of this machinery was connected together in such a way as to form a complete and homogeneous system. The condenser, the engine, and the oil trap could be taken out of the building, without serious injury thereto, by taking off the taps and withdrawing the bolts. The other connections could then be taken out, also without serious injury thereto.

114 Tenn—17

At the time, however, that this machinery was put in place, it was intended by the parties that it should be permanently attached to the freehold, subject only to the failure to comply with the condition of payment. None of the machinery furnished under the contract and so placed in the building could be withdrawn without seriously impairing the efficiency of the plant. The machinery was sold by the Fred W. Wolf Company to the ice company for the purpose of being attached to the freehold in the manner in which it was attached, and it was so fastened thereto with the knowledge and consent and aid of the said company.

On April 1, 1901, the Consumers' Ice, Coal & Cold Storage Company executed a mortgage on the whole plant to the Union Bank & Trust Company, to secure an issue of $15,000 of bonds, and on January 1, 1902, a second mortgage was placed thereon, in favor of the Union Bank & Trust Company, as trustees, to secure $35,000 of bonds. These mortgages were taken upon the property in the belief that the machinery above referred to constituted a part of the plant, and that the whole was subject to mortgage. Neither the trustee nor the bondholders had any knowledge or notice of the fact that the Fred W. Wolf Company had retained title to the machinery.

The ice company having failed, the trustee was proceeding to foreclose the mortgages, whereupon the Fred W. Wolf Company brought its replevin suit to recover the machinery. Then the present bill was filed to enjoin

that suit, and to test the question of priority between the parties.

The chancellor rendered a decree in favor of the complainants, upholding the priority of the mortgagees, and thereupon the seller, the Fred W. Wolf Company, appealed to this court, and has assigned errors.

NORMAN FARRELL, JR., for complainants.

W. H. WILLIAMSON, for defendants.

MR. JUSTICE NEIL, after making the foregoing statement of facts, delivered the opinion of the Court.

We are referred by counsel for the defendants to *Mc-David* v. *Wood,* 5 Heisk., 95, as authority for the proposition that the intention of the parties in affixing things to land will generally determine whether, on being so attached, they become fixtures, and so a part of the realty. In that case the rule contended for is enunciated in the following language: "Look first to the intention with which the thing, which may be a fixture by annexing it to the freehold, was annexed, and if it is found that it was the intention of the owner of the freehold to make the erection for the permanent use and advantage of the land, and to remain permanently attached to the soil, such erection is to be regarded as part of the realty. But if the erection is not made with the view of a permanent addition to the land, but for purposes of trade or manufacture, the erection will be regarded as a chat-

tel, unless a contrary intention is made to appear." In that case the contest was between the executor and heir, and the property involved a steam sawmill, with its machinery and appendages. The court held that this property was to be treated as personalty, although fixed to the land, because it appeared in the evidence that the mill was erected by four partners on the land of one, under a lease of the land, with the agreement that it was to be removed whenever they thought proper; that it was erected for manufacturing purposes, and not with the view of giving additional value to the land; that the owner of the land did not agree to its erection as a permanent improvement, and did not at any time regard it it any other light than as personal property belonging to the four partners. To the same effect, *Snowden* v. *Memphis Park Association* 7 Lea, 225, 229; *Saunders* v. *Stallings,* 5 Heisk., 65, 70-73; *Memphis Gaslight Co.* v. *The State,* 6 Cold., 310, 98 Am. Dec., 452. The relations of the parties have much to do with the matter also; likewise the use to which the property is put. The general rule is that everything attached to the freehold becomes land. *Childress* v. *Wright,* 2 Cold., 350. This rule is relaxed, as between landlord and tenant, in favor of the latter (*Saunders* v. *Stallings,* supra), and as to machinery introduced for manufacturing purposes (*Memphis, etc., Co.* v. *The State,* supra), also between the tenant for life and the remainderman (*Cannon* v. *Hare,* 1 Tenn. Ch., 22); but is administered strictly between the owner of the land and a trespasser making erections thereon

Bank v. Wolf.

(*Malone* v. *The State,* 11 Lea, 701; *Childress* v. *Wright,* supra), and, between vendor and vendee, in favor of the latter. *Degraffenreid* v. *Scruggs,* 4 Humph., 451, 40 Am. Dec., 658.

In the case last cited, it appeared that one Shelton was the owner of a cotton farm, on which he erected a cotton gin for the purpose of ginning cotton produced thereon; that the house was built upon blocks, and the gin fastened to the house by nails and braces. Shelton thereafter conveyed the land by deed in trust to Nelson to secure the payment of certain debts. Subsequent to the making of this deed in trust, Shelton executed a deed in trust to one Scruggs, for the benefit of other creditors, on the cotton gin alone. Thereafter Nelson enforced his trust deed by a sale of the property therein conveyed, the land, and Degraffenreid became the purchaser. Scruggs, the trustee under the second deed in trust, demanded the cotton gin from Degraffenreid but the latter refused to surrender it. Thereupon Scruggs brought suit. The court below charged the jury that, if the gin could be severed and removed without serious injury to the land or gin, it would not pass under the deed, and they must find for the plaintiff. The jury so found, and upon appeal to this court, after stating the strict rule of the common law as above announced, and its relaxation in favor of tenants, and in relation to fixtures erected for purposes of trade, and its rigid maintenance as between executor and heir, and between vendor and

vendee, the court proceeded to decide the controversy in favor of the venedee, in the following language:

"In this case the gin was erected in the ginhouse, and fastened to the house by nails and braces. It was, therefore, permanently attached and fixed to the freehold, and this is the true and certain criterion to determine whether it passed by the deed with the freehold. . . . Any attempt to carry out the principles stated by his honor to the jury would be attended with endless difficulty and uncertainty. If fixtures attached to the freehold may be removed provided they can be severed without any injury to the land, scarcely a case could occur in which they would pass by the deed."

As said by Cooper, J., in *Cannon* v. *Hare,* supra: "The finest framed or other buildings . . . are constructed upon foundation walls, and any building can be taken down to the top of the foundation walls, and to the bottom rock of the foundation walls, without injury to the soil. Accordingly, the tendency of modern decisions is to make the rights of the parties to fixtures and buildings depend, not on the manner in which they are attached to the freehold, but upon the character of the parties, the intention in erecting the improvements, and the uses to which they are put.

"Loose machinery in a manufacturing establishment will, as we shall see presently, go to the heir as against the executor, while the same machinery firmly attached to the building, and even the building itself, belong to the tenant for years, as between him and the landlord.

So, substantial houses built upon stone foundations with brick chimneys, and indubitably attached to the soil, will, if erected principally for purposes of trade, belong to the outgoing tenant for years; while the same buildings, or even buildings resting upon pillars or trestles, and not let into the soil, if erected and used as dwellings, or for the more convenient enjoyment of the land, or for the purpose of obtaining an income by renting, would go, with the freehold, to the landlord, even as against a tenant for years."

So, in *Cubbins* v. *Ayres,* 4 Lea, 329, it was held, in favor of a tenant as against his landlord, that a barroom counter and shelving, and an office counter, and an iron safe, erected on the premises of the landlord by the tenant, should be treated as personal property, under the theory of trade fixtures, although the counter was nailed to the wall and the floor, and the shelving was behind the counter, and was fastened by nails also to the walls and the floor, and the iron safe was well set into an aperture in the wall larger than the safe itself, and surrounded with a structure of wood, fitted and securely fastened to the sides and top of the wall around the opening, and inclosed therein.  On the other hand, in *Johnson* v. *Willinghby,* 3 Tenn. Cas., 338, it was held that a dwelling house, kitchen, stable, corncrib, and other outhouses erected upon land by a tenant, without any contract with the landlord in respect thereto, became the property of the owner of the land at the expiration of the tenancy, on the ground that the erection was

made with a view of permanent advantage to the land, and not for the purpose of trade or manufacture. And in *Johnson* v. *Patterson*, 13 Lea, 626, machinery in a cotton factory was held to be realty, under the following circumstances: When President Andrew Johnson died, he had a debt on one Prather, due by note, for the sum of $10,000. This debt was secured by deed in trust to Thomas Maloney, conveying a brick cotton factory, with the two acres of land on which it stood, with all the machinery and fixtures of all kinds in the cotton factory, consisting of spinning frames and attachments necessary to operate them, with all appurtenances connected with or belonging to the factory, with power to sell on default, as is usual in such cases. On default occurring, the trustee advertised and sold the property, and it was bought in by the three children of President Johnson, viz., Andrew, Jr., Mrs. Patterson, and Mrs. Stover, for the debt due on the trust deed. The trustee conveyed the property to these purchasers by deed, and they went into possession. The point was made that much of the property was strictly personal property, and did not come within the definition of real estate. Speaking to this subject, the court said: "As to the point suggested in the bill, that much of the property was strictly personalty and not realty, alluding, as we learn from argument of counsel, to the machinery making up a part of the cotton factory conveyed, we need say but little. "The complainant" (the widow of Andrew Johnson, Jr., who had died in the meantime)

"stands in the shoes of her deceased husband in asserting the position that the machinery making part of the cotton factory is personalty. It is beyond question that he and the copurchasers purchased the whole property as one property, and treated it as such. The intent was to either use it permanently as such, and as a whole, or to sell it as a whole. Most certainly the parties did not intend to become owners as tenants in common of the brick house erected for the purpose of the enterprise, and to hold the machinery as personalty, with the right to divide it among them as such. It would probably, if not certainly, have been impossible for them so to divide it without rendering it useless for all practical purposes. Modern authorities all agree that the most controlling test of the question whether property connected with real estate is to be deemed realty or a mere chattel, removable at the pleasure of the owner, is the intention and purpose of the erecttion. . . . But the intent and the nature of the property, taken as a whole, as the parties purchased it and treated it, concurred in making it a part of the freehold, and stamped it as realty, and it must so be held."

When the facts contained in the statement are viewed in the light of the foregoing decisions, we think it cannot be doubted that the purpose of the ice company in placing the machinery in the building was to permanently enhance the value of the property and to make it a part of the realty. It is equally clear that this purpose was concurred in by the seller of the ma-

chinery, subject only to the condition that such seller should have a right to withdraw it in case the purchase money notes should not be paid.

The question to be determined is whether this secret condition, known only to the seller and buyer, should be held operative against an innocent purchaser of the realty.

We think this question should be decided in the negative, for two reasons. The first of these reasons is based upon the principle that, where one of two innocent persons must suffer, that one should bear the loss whose conduct or act placed it in the power of a third party to impose upon or deceive another. The second reason is to be found in the policy of our law in respect of real estate titles. That policy is opposed to secret liens, and requires that the public records shall contain evidence of all liens and incumbrances. An opposite view would soon involve titles to realty in great confusion, and result in needless depreciation of land values, since a vendee would search the records in vain for a secret agreement between the vendor and some prior owner in respect of the fencing or houses, or mills containing machinery, or other erection upon the land. The purchaser desiring to buy land would justly suffer under the apprehension of some such secret understanding between prior parties, whereby, after paying for the land, he might be deprived, without his consent and without compensation, of a considerable portion of the value of the property that he supposed he was buying.

Now, in the present case, it appears that the machinery was so placed in the factory as to be *prima facie* a part of the realty itself, and the whole erection, composed of the building and the machinery, was in the possession of the owner of the land. The trustee and bondholders under the two mortgages or trust deeds were justified from the appearance of things in assuming that the machinery was in truth a part of the land, and in taking such machinery into estimation in determining the amount of money which they would advance upon the entire property. Now to deprive them of this security in behalf of the seller of the machinery, who retained the title merely as security, and by a secret or unrecorded writing between such vendor and the purchaser of the machinery, would be, in our judgment, to sacrifice the substance of justice to its mere form.

This question has received consideration in other jurisdictions, and the decided weight of authority is in favor of the view here taken. The cases are collected in a note on pages 628 and 629, 13 Am. & Eng. Encyc. of Law (2d Ed.).

We shall refer specially to a few of the cases cited.

In *Southbridge Savings Bank* v. *Exeter Works*, 127 Mass., 542, it appeared that the defendant delivered to one Stevens, to be used on trial at his machine shop in Brookfield, an Exeter sectional boiler, which, by agreement between them, was to remain the personal property of the defendant until paid for. Thereafter Stevens made a mortgage to the plaintiff of the machine

shop and land, under which the property was sold; and the plaintiff claimed under that sale. At the time the mortgage was executed, the machinery had been placed in the building, which was a machine shop, by Stevens, the mortgagor, for the purpose of furnishing the motive power for his machinery. It was firmly attached to the land, was in connection with the steam engine, shafting, and machinery adapted to the machine shop and business, and was essential to the equipment and use of the building for the purpose for which it was intended. It was therefore *prima facie* a part of the land. In speaking to this subject, and the rights of an innocent purchaser under such state of facts, the court said:

"Where, as in this case, personal property is sold for the purpose of being annexed to the realty, and it is so annexed, an agreement between the seller and the buyer that it shall not become a part of the realty, but shall remain the personal property of the seller, will not bind or affect a vendee or mortgagee without notice. Notwithstanding such agreement, the property will pass to such vendee or mortgagee as a part of the realty." To the same effect, see *Hunt* v. *Bay State Iron Co.*, 97 Mass., 279; *Thompson* v. *Vinton*, 121 Mass., 139; *Prince* v. *Case*, 10 Conn., 375, 27 Am. Dec., 675; *Landon* v. *Platt*, 34 Conn., 517; *Powers* v. *Dennison*, 30 Vt., 752; *Davenport* v. *Shants*, 43 Vt., 546; *Tibbetts* v. *Horne*, 65 N. H., 242, 23 Atl., 145, 15 L. R. A., 56, 23 Am. St. Rep., 31; *Bringholff* v. *Munzenmaier*, 20 Iowa, 513, 518, 519; *Stillman* v. *Flenniken*, 58 Iowa, 450, 454, 10 N. W., 842,

43 Am. Rep., 120; *Rowand* v. *Anderson,* 33 Kan., 264, 6 Pac., 255, 52 Am. Rep., 529; *Climer* v. *Wallace,* 28 Mo., 556, 75 Am. Dec., 135.

In *Prince* v. *Case,* supra, the reason for the rule is thus stated:

"The policy of our law is that titles to real estate shall appear upon record, so that all may in this way be informed where the legal estate is. But were this new mode of conveyance to prevail, incumbrances might frequently be found to exist, against which no vigilance could guard, no diligence protect. Our records would be fallacious guides, and, when we had gained all the information they could give, we should remain in doubt as to the title. It is much better to leave those unaided who had ventured to rely upon the word or honor for their redress, than to suffer a person who had resorted to the official register to be defeated by secret claims of this kind. The law cannot prefer the claims of those who take no care of themselves to those who have faithfully used all legal diligence. If a loss is to be sustained, it is more reasonable that he who neglected the means the law put into his power should suffer, rather than he who has used those means." Thise case is cited, with approval of the reasoning just set forth, in the cases of *Powers* v. *Dennison,* supra, *Tibbetts* v. *Horne,* supra, and *Rowand* v. *Anderson,* supra.

There are some cases which hold that the rights of the conditional seller are superior even to the rights of a purchaser or mortgagee without notice. We have exam-

ined these authorities, but do think they rest upon a sound basis. We are of opinion that the rule which we have announced is the sound view of the matter, and is supported by reason and the weight of authority.

There are cases both ways upon the question whether the rights of such conditional seller would be superior to those of the holder of a mortgage in existence at the time the property was annexed to the land. It is unnecessary to go into this question in the present case, and we express no opinion upon it. Nor are we to be understood as impeaching the validity of conditional sales of personalty in general, or as impairing their efficiency, as previously understood in this State, when the property which is the subject of such sales remains in its original form, not transmuted into realty in such guise, or under such circumstances, as are of character likely to deceive innocent purchasers or mortgagees of the latter class of property.

It results from the views above expressed that we are of opinion the decree of the chancellor and of the court of chancery appeals, in favor of the mortgagees, must be affirmed.